18356

WRENN & OUTLAW, INC. v. EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Ltd., Respondent

(142 S. E. (2d) 741)

98

*Messrs. Leatherwood, Walker, Todd & Mann*, of Green-ville, *for Appellant,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,* In Reply.

June 8, 1965.

BUSSEY, Justice.

The question involved in this appeal is to what extent, if any, the respondent is liable for the cost of defense and the payment of a judgment recovered by Miss Elizabeth Coleman in an action against the appellant, Wrenn & Out-

law, Inc., hereinafter referred to simply as Wrenn. Wrenn operated a supermarket and on March 17, 1962, Miss Coleman was injured when a bag boy employed by Wrenn closed the door of her car on her hand. She had bought groceries at Wrenn's store; the bag boy had carried her purchases to her automobile and placed them on the rear seat of her car, having opened the right rear door. About the same time, as Miss Coleman was entering her car at the right front door, she placed her hand on the center post, turning in the seat to see that the groceries were in a stable position on the seat, and, as she did so, the bag boy negligently closed the right rear door injuring her hand.

At the time of this accident Wrenn had in force a "Non-assessable comprehensive general-automobile liability policy" issued by Harleysville Mutual Casualty Company, hereinafter referred to simply as Harleysville. Miss Coleman had in force and effect an automobile liability policy on her car issued by the respondent, The Employers' Liability Assurance Corporation, Ltd., which will hereinafter be referred to simply as Employers'.

Upon action being brought by Miss Coleman against Wrenn, in which the bag boy was not named as a party defendant, Employers' declined to furnish a defense and Wrenn was furnished a defense by Harleysville. The cost of defense incurred by Wrenn amounted to $613.08, and the action resulted in a judgment in favor of Miss Coleman for $1,200, together with costs in the amount of $13.50. There is no issue involved in this case as to these amounts. The judgment and costs of defense were paid by Wrenn, and Harleysville, in turn, remitted to Wrenn taking from Wrenn a more or less standard loan receipt.

The instant action was then commenced by appellant Wrenn alleging that coverage was afforded to it under Employers' policy, and seeking to recover from Employers' the sum of $1,826.58, together with interest, costs and attorneys' fees.

The respondent Employers' plead that Wrenn was not the real party in interest; that no coverage was afforded Wrenn under Employers' policy; that Harleysville's coverage was primary; and that any coverage under the respondent's policy was forfeited by a breach of policy conditions. The issues thus framed by the pleadings (with the exception of the last defense—that the appellant had breached conditions of the respondent's policy) were tried by the court upon a stipulation of facts. The last defense was reserved for later disposition, if such should become necessary.

The trial court concluded that Wrenn was not the real party in interest; that the policy of Employers' afforded Wrenn no coverage; that the policy of Harleysville did afford Wrenn coverage; and entered an order dismissing the action. Wrenn appeals, challenging the holding of the lower court, and further asserts that the trial court erred in failing to hold that the policy issued by Employers' afforded Wrenn primary coverage. It is not contended that the policy of Harleysville did not afford Wrenn coverage, but that such coverage as was afforded Wrenn under its policy was excess coverage.

If the trial court was correct in holding that Wrenn was not the real party in interest, it would follow that it would be unnecessary to consider the other questions raised by the appeal. We conclude, however, that he was in error in so holding. The loan receipt here is of the same general tenor as the loan receipts in the cases of *Phillips v. Clifton Mfg. Co.,* 204 S. C. 496, 30 S. E. (2d) 146, 157 A. L. R. 1255, and *Martin v. McLeod,* 241 S. C. 71, 127 S. E. (2d) 129. We see nothing in the facts of this case which would require a result different from that reached in the cited cases. Respondent, in support of the ruling of the trial court in this respect, quotes from the opinion in *Martin v. McLeod, supra,* the following language:

"The defendant was a stranger to the insurance contract, and plaintiff and her insurer were free to contract with each other as they saw fit without affecting his rights."

It is then argued that the instant case is distinguishable in that if Employers' policy is held to provide coverage, then it could not be a "stranger" to the contract between Wrenn and Harleysville. We see no merit in this argument. Even though Employers' afforded coverage to Wrenn under its contract with Miss Coleman, it was still a stranger to the contract between Wrenn and Harleysville.

The principal issue before us is whether under the facts of the case any coverage was afforded Wrenn under the policy issued by Employers' to Miss Coleman. The policy of Employers' provides coverage for legal liability to pay damages because of bodily injury "sustained by any person; * * * arising out of the ownership, maintenance or use of the owned automobile." Insured against such liability, in addition to the named insured, is "any other person using such automobile, provided the actual use thereof is with the permission of the named insured." Also insured is, "Any other person or organization legally responsible for the use of an owned automobile, * * * provided the actual use thereof is by a person who is an insured under" the terms of the policy.

Under definitions, the policy contains the following language:

" 'Use' of an automobile includes the loading and unloading thereof."

There is no contention that the activity of the bag boy here was not with permission of the named insured, Miss Coleman, and the key question is whether the activity of the bag boy as disclosed by the record constituted "use" of the Coleman automobile within the meaning of the policy. If his activity did constitute such use, the bag boy was insured, and the policy clearly afforded coverage to Wrenn, since Wrenn was legally responsible for the acts of its servant the bag boy.

While there are some minor factual differences, we think that the decision of the key question here is controlled by the

rationale of the opinion in the case of *Coletrain v. Coletrain,* 238 S. C. 555, 121 S. E. (2d) 89. There is no substantial difference in the policy provisions there involved and the policy provisions here. As there pointed out, if the language of the policy admits of more than one construction, that most favorable to the insured must be adopted. Here, as there, according to the terms of the policy "use" of the automobile included the loading and unloading thereof. The use to which Miss Coleman was putting her car on the day of the accident, grocery shopping, is a use to which certainly a large percentage of private passenger automobiles are frequently put, and, we think, a use within the contemplation of the parties when the policy was issued. In order to use the automobile for grocery shopping, it was, of course, necessary to load the groceries therein, which, as a matter of course, involved opening and closing the door, all of which was a part and parcel of the use to which the automobile was then being put; a use which we think was within the language and intent of the policy.

Since, in our view the bag boy was clearly using Miss Coleman's automobile with her permission, and since Wrenn was legally responsible for the acts of its agent, we think Employers' policy clearly afforded coverage to Wrenn.

In arriving at a different conclusion the court below relied principally upon the cases of *Commercial Standard Ins. Co. v. New Amsterdam Cas. Co.* 272 Ala. 357, 131 So. (2d) 182, and *Travelers Ins. Co. v. Safeguard Ins. Co.,* 346 Mass. 622, 195 N. E. (2d) 86. The Alabama case is, we think, clearly distinguishable on the facts. There the agent of a nurseryman, one Ross, loaded certain shrubbery purchased by Mr. and Mrs. Richards into the trunk of their two door automobile; loaded certain other shrubbery in the rear seat portion of the car, and placed perhaps one bush on the floor in the front of the car. After completing this loading, Ross remained beside the open door of the automobile for a period of three to four minutes conversing with Mrs. Richards about a purchase she had made previous to those

that day. At the close of the conversation, Ross, as a convenience to Mrs. Richards, proceeded to close the car door, and, in doing so, injured the hand of a child of the Richards.

Under these facts, a majority of the court held that the act of loading had been completed and that the act of closing the door was an independent act entirely outside of the act of loading, and not a "use" within the meaning of the policy. Here, the acts of the bag boy in opening the door, placing the groceries in the car, and immediately closing the door, apparently constituted a continuous operation without any interruption. Moreover, the right rear door here was opened and closed solely in connection with loading the car.

The facts of the cited *Massachusetts case* are on all fours with the instant case, with the exception that it does not appear that the policy there contained a provision to the effect that "use" of the automobile included loading and unloading thereof. That court apparently construed the words "use" and "operation" as being synonymous, although the latter word was not contained in the policy. This interchange of terms by the court is not readily understandable without research into prior decisions of that court, some of which are cited in the opinion. Consideration of such prior decisions leads us to the conclusion that the result reached in the cited case was controlled by and predicated upon prior decisions of that court construing certain statutory provisions of the Compulsory Insurance Law of the State of Massachusetts, with which we, of course, are not at all concerned. For these reasons, we do not consider the *Massachusetts case* as being at all persuasive.

■ Having reached the conclusion that the policy of Employers did afford coverage to Wrenn, we then reach the consideration of whether such coverage was primary, pro-rata, or secondary in connection with coverage affored Wrenn by Harleysville.

Both policies contain "other insurance" clauses which, while not identical, are very nearly so, and are clearly to

the same purport and effect. Each provides that if the insured has other insurance against a loss covered by the policy, the insuring company shall not be liable under its policy for a greater proportion of such loss than the applicable limit of liability stated bears to the total applicable limit of liability of all valid and collectible insurance against such loss. Each of the policies contains a provision that with respect to the use of any non-owned automobile the coverage provided shall be excess insurance over any other valid and collectible insurance. The excess insurance provision in the policy of Employers' is, of course, not applicable since the automobile was owned by its named insured. The pro-rata clause in Employers' policy is applicable only if Wrenn had other insurance.

Under the terms of Harleysville's policy, however, Wrenn had no other insurance, since the loss arose out of the use of a non-owned automobile, with respect to which the coverage afforded by Harleysville's policy was specifically declared to be excess insurance over the valid and collectible coverage afforded Wrenn by Employers'. We have no difficulty in concluding, in view of the plain and clear language of the two policies, as applied to the facts of this case, that the coverage afforded by Employers' was primary coverage and that the coverage afforded by Harleysville was secondary. While we have not heretofore had this precise question before us, the conclusion which we reach is in accord with the weight of authority throughout the United States. In this connection see *American Surety Co. of New York v. Canal Ins. Co.*, (1958, C. A. 4 S. C.) 258 F. (2d) 934; Appleman's Insurance Law and Practice, Sec. 4914; 7 Am. Jur. (2d) 544, Automobile Insurance, Sec. 202; Annotation 76 A. L. R. (2d) 505, Sec. 2.

For the reasons herein set forth, the judgment of the lower court is reversed and the cause remanded for the disposition of the reserved issue.

TAYLOR, C. J., Moss and LEWIS, JJ., and LIONEL K. LEGGE, Acting Associate Justice, concur.