496 S.E.2d 875

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellant,

v.

Sheila MOORER, as Personal Representative of the Estate of
Eddie Lee Moorer, deceased, Sam Antonio Neals, Michael
Anderson, Mona T. "Tiny" Preston, Shelton Richardson, and
Stella Richardson, Defendants,

Of whom, Sheila Moorer, as Personal Representative of the
Estate of Eddie Lee Moorer, deceased, is Respondent.

No. 2802.

Court of Appeals of South Carolina.

Heard Feb. 5, 1998.
Decided Feb. 23, 1998.

48

Timothy A. Domin and James A. Atkins, both of Clawson & Staubes, Charleston, for Appellant.

E. Paul Gibson, of Riesen Law Firm, North Charleston, for Respondent.

ANDERSON, Judge.

State Farm Mutual Automobile Insurance Company brought this declaratory judgment action to determine whether four policies of insurance issued to Earline Neals provided liability coverage for her grandson's (Sam Neals's) use of a non-owned vehicle. Sam Neals was a passenger in a non-owned vehicle when he allegedly shot and killed Eddie Lee Moorer, who was driving alone in another vehicle on Highway 70 in Orangeburg County. The master concluded liability coverage was due under the policies and that the four policies could be stacked. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

The parties stipulated to the pertinent facts for purposes of the declaratory judgment action. On May 17, 1992, Eddie Lee Moorer was driving alone in his 1984 Chrysler LeBaron on Highway 70 in Orangeburg County. At the same time, Shelton Richardson was driving on Highway 70 in a vehicle owned by his mother, Stella Richardson. Sam Neals was a front-seat passenger in the Richardson vehicle; Michael Anderson and Mona T. "Tiny" Preston were passengers in the back seat.

As the Richardson vehicle proceeded on Highway 70 it came upon the vehicle of Eddie Lee Moorer. Richardson accelerated, and as the Richardson vehicle began to pass Eddie Lee Moorer's vehicle on the left side, one or more gunshots were fired from the Richardson vehicle at Moorer's vehicle. Eddie Lee Moorer died from a single gunshot wound to the left side of his head. None of the four occupants of the Richardson vehicle ever reported the events of May 17, 1992 to any authority. No weapons were ever recovered by law enforcement.

On June 11, 1993, Michael Dash, an acquaintance of Neals, Richardson, Anderson, and Preston, gave a written statement to the Orangeburg County Sheriff's Department implicating Neals, Richardson, Anderson, and Preston in the shooting death of Eddie Lee Moorer. All four were arrested and charged with murder. Prior to trial, Richardson, Anderson, and Preston were allowed to plead guilty to misprision of a felony in exchange for their testimony against Neals. Neals ultimately pleaded guilty to voluntary manslaughter.

As a result of the death of her husband, Eddie Lee Moorer, Sheila Moorer commenced wrongful death and survival actions alleging various torts against Neals, Anderson, Preston, Shelton Richardson, Stella Richardson, and John Doe. Consequently, State Farm filed this action for declaratory judgment against Sheila Moorer, as personal representative of the estate of Eddie Lee Moorer, Sam Neals, Anderson, Preston, Shelton Richardson, and Stella Richardson for a determination of whether coverage exists for the death of Eddie Lee Moorer under four automobile liability policies issued to Earline Neals, the grandmother of Sam Neals.[1] At the time of the shooting, Sam Neals resided with his grandmother, Earline Neals, and was an "insured" under the terms of her policies. The parties agreed Eddie Lee Moorer met his death through actions arising out of the use and operation of a motor vehicle

---

1. The declaratory judgment action also sought a determination as to whether there was coverage under two automobile liability policies issued to Stella and Lephus Richardson, the parents of the driver, Shelton Richardson. All issues regarding the Richardson liability policies were resolved when the limits of the policies were paid, and they are not at issue in this appeal. The parties agreed the Estate's damages exceeded the amount paid under the Richardson policies.

within the meaning of *Wausau Underwriters Insurance Co. v. Howser*, 309 S.C. 269, 422 S.E.2d 106 (1992). State Farm's primary argument against coverage was insurance for a non-owned vehicle is voluntary coverage which may exclude intentional acts. State Farm argues the policies limit liability coverage to "accidents"; therefore, intentional acts such as the shooting by Neals are outside the scope of the policies.

The master found the State Farm policies issued to Earline Neals provided coverage for Sam Neals's use of a non-owned vehicle, the use resulting in the shooting death of Eddie Lee Moorer. The master found liability coverage is not limited to an "accident" in the case of a non-owned vehicle; rather, coverage is triggered by "use" of a non-owned vehicle which results in injury.

The master stated that even if an "accident" is necessary for coverage, since State Farm failed to define the term in its policy, the court must determine what constitutes an "accident" under the policy. Relying on *Chapman v. Allstate Insurance Co.*, 263 S.C. 565, 211 S.E.2d 876 (1975), the master ruled that an "accident" is defined from the point of view of the victim, Eddie Lee Moorer, not the insured, Sam Neals. He concluded Moorer's injuries were the result of an "accident" because the harm to Moorer was unforeseen as to Moorer and not the result of his own misconduct.

The master also noted State Farm failed to include a policy provision which excluded injuries caused by intentional acts of an insured while using a non-owned vehicle. Moreover, the master concluded that, although there was evidence "that Neals intentionally shot a firearm out of the Richardson vehicle while taunting Moorer, there [was] no evidence to support the contention that Neals intended to shoot Moorer *and* intended to kill him." Finally, the master found it was questionable whether the anti-stacking provision in the policy applied only to liability coverage for owned vehicles or whether it related to the coverage for non-owned vehicles as well. Construing the perceived ambiguity against State Farm, the master ruled Sheila Moorer could stack the coverage of all four policies issued to Earline Neals, for a total recovery of $200,000. State Farm appeals.

## ISSUES

(1) Did the master err in determining Moorer was entitled to recover under Earline Neals's liability insurance when the policies were allegedly limited to coverage for "accidents"?

(2) Did the master err in finding the policies could be stacked?

## STANDARD OF REVIEW

This case involves an action at law for interpretation of a contract referred to the master-in-equity with direct appeal to the Supreme Court. Therefore, this Court will correct any error of law, but we must affirm the master's findings of fact unless there is no evidence which reasonably supports those findings. *Cobb v. Benjamin*, 325 S.C. 573, 482 S.E.2d 589 (Ct.App.1997).

 "On appeal of an action at law tried by the judge without a jury [the Court of Appeals] will review the [judge's] factual findings to determine if there is any evidence to support them." *South Carolina Farm Bureau Mut. Ins. Co. v. Windham*, 303 S.C. 330, 331, 400 S.E.2d 497, 497 (Ct.App. 1990). An action to construe a contract is one at law. *Texcon, Inc. v. Anderson Aviation, Inc.*, 284 S.C. 307, 326 S.E.2d 168 (Ct.App.1985). In legal actions, our scope of review extends only to the correction of errors of law. *State Auto Property & Cas. Ins. Co. v. Gibbs*, 314 S.C. 345, 444 S.E.2d 504 (1994) (action to declare excess or secondary liability insurance coverage is an action at law and thus, facts found by a judge sitting without a jury should not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings).

## LAW/ANALYSIS

### 1. LIABILITY COVERAGE

State Farm argues liability coverage is not available for the injuries and resulting death of Eddie Lee Moorer because liability coverage is limited to "accidents," and the intentional shooting of Moorer by the insured, Sam Neals, was not an "accident." State Farm argues whether the occurrence is

deemed an accident should be viewed from the standpoint of the insured, not the victim. Further, State Farm argues coverage is not available for the intentional acts of the insured because non-owned vehicle coverage is voluntary coverage for which the parties may stipulate their own terms.

The State Farm policies provide for liability coverage in pertinent part as follows:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

 a. *bodily injury* to others, and

 b. damage to or destruction of property including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car*. . . .

The emphasized words are defined in the policy. Under a subsection labeled "Coverage for the Use of Other Cars," the policy further provides, "The liability coverage extends to the use, by an *insured,* of a *newly acquired car, a temporary substitute car* or a *non-owned car.*"

a. Coverage for owned and non-owned vehicles is limited to "accidents."

█ The master found the policy terms noted above expressly limit liability coverage to instances where an insured becomes legally liable to others for injury or damages caused by an "accident" involving an *owned* vehicle, but that the policy does not provide such a limitation for non-owned vehicles. The master stated "it appears that an 'accident' does not have to occur in the case of a *non-owned* vehicle, but merely injury arising out of the *use* of a non-owned vehicle."

State Farm contends the policy language simply extends liability coverage for "accidents" to non-owned vehicles. Moorer argues the portion of the policy regarding non-owned vehicles does not specifically state an "accident" is required for coverage to apply, and any ambiguity should be resolved in favor of coverage. We find no ambiguity on the face of the policy. We agree with State Farm that the provision in question simply extends liability coverage for "accidents" to non-owned vehicles, and it is found in a logical place in the

policy. To view the policy as requiring an "accident" only for the use of owned vehicles is a strained construction that ignores the clear wording of the policy.

b. No explicit exclusion for intentional acts.

Having found liability coverage for owned and non-owned vehicles in the policies is limited in both instances to "accidents," we must now determine whether this term or any other policy language excludes coverage for intentional acts. State Farm argues Neals committed an intentional act by shooting and killing the victim, Eddie Lee Moorer, and that the policies in question do not provide coverage for intentional acts of the insured. State Farm asserts liability coverage for non-owned vehicles is voluntary; therefore, the parties may choose their own terms and an insurer may exclude coverage for intentional acts of the insured while using a non-owned vehicle.

In *South Carolina Farm Bureau Mutual Insurance Co. v. Mumford*, 299 S.C. 14, 382 S.E.2d 11 (Ct.App.1989), we held that an insurer may not exclude intentional acts from statutorily required policies of liability coverage. However, we stated that this prohibition does not apply to voluntary policies of insurance that are not required by South Carolina law. In *Mumford* we held that the statute requiring all automobile policies to insure "against loss from the liability imposed by law for damages" mandated coverage even where the insured deliberately crashed her car into a tree, despite the fact that the policy purported to exclude intentional acts:

> The statute [S.C.Code Ann. § 38–77–140] does not say insurers must cover "accidents" arising from the use of the insured vehicle; it says they must cover "liability imposed by law" on the insured. The only place the word "accident" appears in the statute is in a later clause limiting the amount of compulsory coverage to certain dollar limits "in any one accident." In this context, the word "accident" simply means "occurrence." *Nationwide Mutual Insurance Company v. Roberts*, [261 N.C. 285, 134 S.E.2d 654 (1964) ]. Since the [Financial Responsibility] Act mandates coverage if the law imposes liability for damages on the at

fault insured, the exclusionary clause [purporting to exclude intentional acts] conflicts with the plain wording of the Act.

The exclusion also conflicts with the legislative purpose of the Act. Insurance against third party loss arising out of the use of a motor vehicle is compulsory under South Carolina law. *See* Sections 56–10–10 and 56–10–20, Code of Laws of South Carolina, 1976, as amended. The primary purpose of compulsory insurance is to compensate victims who have been injured by at fault motorists, not, like that of voluntary insurance, to save harmless the insured himself. *Nationwide Mutual Insurance Co. v. Roberts, supra. Accordingly, the victim's right to recover from the insurance carrier does not depend upon whether the conduct of its insured was intentional or negligent. Id.*

The principle that one should not be permitted to insure against his own intentional wrongdoing applies to voluntary insurance, not compulsory insurance. Where the Legislature makes coverage compulsory, instead of leaving it to the voluntary market, it has already balanced the public interest in prohibiting insurance for intentionally harmful acts against the public interest in compensating the victims of at fault motorists. By making coverage compulsory, it chooses to weight the latter interest more heavily than the former. Once the Legislature has made that choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy.

*Id.* at 19–20, 382 S.E.2d at 14 (footnotes omitted) (emphasis added).

In *Jackson v. State Farm Mutual Automobile Insurance Co.,* 288 S.C. 335, 342 S.E.2d 603 (1986), a case involving a dispute over the stacking provisions for non-owned vehicles in four liability policies, our Supreme Court stated: "Coverage for non-owned vehicles is not required by statute, and is provided by a voluntary contract between the insured and the insurer. Therefore, the parties may choose their own terms regarding coverage for non-owned vehicles." *Id.* at 337, 342 S.E.2d at 604.

However, more recently, in *State Auto Property and Casualty Insurance Co. v. Gibbs,* 314 S.C. 345, 444 S.E.2d 504 (1994), our Supreme Court stated a provision in a non-owner's

policy, which purported to exclude coverage while the insured was driving an automobile owned by the insured or a member of the household, was probably invalid as to third parties. The court did not decide this precise issue because it was not raised on appeal. However, the court noted that "[t]he *Mumford* decision recognized the evolving policy of the legislature in its continuing effort to require that all South Carolinian's [sic] have the ability to pay for injury caused on our highways." *Id.* at 350 n. 3, 444 S.E.2d at 507 n. 3. The court explained:

> Under S.C.Code Ann. § 56–9–20(7), a "motor vehicle liability policy" is defined as "[a]n owner's or *operator's* policy of liability insurance that fulfills all requirements of §§ 37–77–140 through 38–77–230." [Emphasis added]. Thus, the legislature clearly intended "non-owner's" policies and automobile owner's policies to follow the same rules.

*Id.* at 350, 444 S.E.2d at 506.

We agree with State Farm's assertion that the master erred in stating there was no evidence that Neals "intended to shoot Moorer *and* intended to kill him." However, based on *Gibbs*'s observation that the legislature intended owner's and non-owner's policies to follow the same rules, we question whether an insurer may validly exclude coverage for intentional acts of the insured while using a non-owned vehicle when the exclusion is not allowed for owned vehicles. We need not decide this question in the current appeal because, as the master noted in his order and State Farm conceded at oral argument, State Farm did not include a provision explicitly excluding intentional acts of the insured from liability coverage in its policies.[2] Therefore, State Farm may not deny coverage on the basis of an exclusionary clause, and we must look to the definition of "accident" in determining what coverage is available. The insurance policies do not define the term "accident." State Farm argues the term should be defined from the point of view of the insured, Sam Neals, and since Neals's actions were intentional, rather than accidental, coverage should not be afforded.

---

2. The master noted State Farm did include an express provision excluding coverage for intentional acts under the section pertaining to Personal Injury Protection.

c. "Accident" defined.

■ The master, while finding coverage for non-owned vehicles was not limited to accidents, nevertheless determined that if the limitation applied, "accident" should be defined from the point of view of the victim, Eddie Lee Moorer, and that because the injuries were an accident as to him, liability coverage was due, relying on *Chapman*, 263 S.C. 565, 211 S.E.2d 876.

In *Chapman*, the court stated: "[W]hen an insured is intentionally injured and the injury is as to him unforeseen and not the result of his own misconduct, the general rule is that the injury is accidentally sustained within the meaning of the ordinary accident insurance policy and the insurer is liable therefor in the absence of a policy provision excluding such liability." *Id.* at 570, 211 S.E.2d at 879 (citing with approval *Nationwide Mutual Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964)). In *Chapman*, the injured party was a passenger in a vehicle in which the driver intentionally assaulted her, causing her to fall out of the vehicle. The Court held the plaintiff's injuries occurred through no fault of her own and, consequently, were caused by accident. Therefore, she was entitled to recover as an insured under the uninsured motorist policy issued to her father.

State Farm contends *Chapman* is not applicable because it dealt with uninsured coverage, not liability coverage. It contends that when determining whether an accident has occurred for liability insurance, the event should be viewed from the point of view of the insured, not the victim. State Farm contends intentional acts by the insured are not covered under the liability policy because coverage for non-owned vehicles is voluntary. State Farm argues that in reference to voluntary policies of liability insurance, South Carolina law provides that whether an accident has occurred is viewed from the standpoint of the insured, not the victim, citing *R.A. Earnhardt Textile Machinery Division v. South Carolina Insurance Co.*, 277 S.C. 88, 282 S.E.2d 856 (1981); *General Insurance Co. of America v. Palmetto Bank*, 268 S.C. 355, 233 S.E.2d 699 (1977); *USAA Property and Casualty Insurance Co. v. Rowland*, 312 S.C. 536, 435 S.E.2d 879 (Ct.App.1993).

The cases cited by State Farm involve commercial liability policies, not automobile liability insurance and, further, the policies contained provisions explicitly stating an accident or occurrence does not include an act which is expected or intended by the insured. For example, in *Earnhardt,* 277 S.C. 88, 282 S.E.2d 856, at issue was the insurer's duty to defend under a general liability policy. The court held the insurer had no duty to defend against an action alleging the insured had knowingly misrepresented the condition of machinery it had sold because the policy defined the word "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured....*" *Id.* at 90, 282 S.E.2d at 857 (emphasis added).

In *General Insurance Co. of America,* 268 S.C. 355, 233 S.E.2d 699, a blanket liability insurance policy stated General Insurance would pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." *Id.* at 359, 233 S.E.2d at 701. The policy defined "property damage" as "injury to or destruction of tangible property." An "occurrence" was defined as "an event, including injurious exposure to conditions, which results ... in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 359 n. 2, 233 S.E.2d at 701 n. 2. In this case the insured, the lessor of a warehouse, was sued by the lessee of the warehouse and a bank which allegedly held a security interest in the property of the lessee. The suits alleged that the insured had wrongfully (intentionally) distrained the lessee's property stored in the warehouse. The court held that the suits did not allege any "occurrence" under the terms of the policy and the insurer was under no duty to defend because there was no act resulting in damage which was neither expected nor intended from the standpoint of the insured.

In *Rowland,* 312 S.C. 536, 435 S.E.2d 879, we noted the policy explicitly defined "occurrence" as an event not intended by the insured:

> The policy defines "occurrence," so far as is pertinent here, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which

results ... in ... [b]odily injury...." Also, an exclusion in the policy provides "[p]ersonal liability and [c]overage ... do not apply to bodily injury ... which is expected or intended by the insured[.]"

*Id.* at 538, 435 S.E.2d at 880–81.

In contrast to the contractual definitions provided by the policies in the above cases, our Supreme Court has stated an occurrence is an "accident" if the event is unexpected or not intended by the person suffering the harm or hurt:

> Judicial decisions defining such terms as "accident", "accidental bodily injury", etc. are indeed quite numerous but, as held by this court in *Goethe v. N.Y. Life Ins. Co.*, 183 S.C. 199, 190 S.E. 451 (1937), such terms appearing in insurance policies should be defined according to the ordinary and usual understanding of their significance to the ordinary or common man. A quite simple, but by no means all inclusive, definition of the word "accident" as understood by the ordinary man is,
>
> > "An unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, *not intended or designed by the person suffering the harm or hurt.* "

*Green v. United Ins. Co. of America*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970) (emphasis added).

State Farm could have defined "accident" in its policies so as to include only events which were not intended or expected by the insured, as in *Earnhardt, General Insurance,* and *Rowland.* There, the policies specifically defined "accident" or "occurrence" as an event resulting in damages. that was not expected or intended by the insured. Because coverage for a non-owned vehicle is voluntary, in addition to defining "accident" so as to exclude any expected injury, State Farm could have easily included an intentional acts clause explicitly excluding coverage for bodily injuries and property damage resulting from the intentional acts of an insured. Since it failed to do so, we believe the general definition stated in *Green,* that an accident occurs where the harm is unexpected or unintended by the victim, should be applied unless altered by the parties. We agree with the master that whether an accident occurred should be viewed from the standpoint of the

person suffering the harm or injury. In this case, the injuries and harm were unexpected and not intended by the victim, Eddie Lee Moorer. In doing so, we rely on the general definition of "accident" as stated in cases such as *Green* since State Farm did not define the term in its policies. Accordingly, we uphold the master's finding that the State Farm liability insurance policies issued to Earline Neals provide coverage for the injuries and death of Moorer caused by Sam Neals's use of a non-owned vehicle.

## 2. STACKING OF COVERAGE

▇ State Farm next contends the master erred in determining the four policies issued to Earline Neals could be stacked. We agree.

The pertinent provisions related to stacking appear under "Section I—Liability—Coverage A" in a subsection entitled "If There Is Other Liability Coverage." This subsection provides:

1. Policies Issued by Us to You

If two or more vehicle liability policies issued by us to *you* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

\* \* \* \* \* \*

3. Temporary Substitute Car, Non–Owned Car, Trailer

If a *temporary substitute car,* a *non-owned car* or a trailer designed for use with *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess.

The master ruled "it is questionable whether this section [# 1 above] applies to liability coverage for *owned* vehicles or if it relates back to *non-owned* vehicle coverage." The master stated that since section # 3 states coverage for a non-owned vehicle is excess if other liability coverage applies, "the coverage should be stackable as excess coverage without limitation if all primary coverage has been paid." The master stated the policy was ambiguous and that State Farm could have avoided this ambiguity by expressly limiting stacking for non-owned vehicles. The master concluded the non-owned coverage

should be stacked from all four policies, for a total recovery of $200,000.[3]

 Stacking refers to an insured's recovery of damages under more than one insurance policy in succession until all of his damages are satisfied or until the total limits of all policies have been exhausted. *Jackson,* 288 S.C. 335, 342 S.E.2d 603. The general rule is that stacking is permitted unless limited by statute or by a valid policy provision. *Id.* A policy provision which purports to limit stacking of statutorily-required coverage is invalid. *Id.*

In *Jackson,* the court held a policy provision which purports to limit stacking of non-owned vehicle coverage is valid, noting that coverage for non-owned vehicles is not required by statute; rather, it is provided by a voluntary contract and the parties may choose their own terms regarding coverage for non-owned vehicles. *Id.* at 337, 342 S.E.2d at 604.

In *Giles v. Whitaker,* 297 S.C. 267, 376 S.E.2d 278 (1989), the court stated an insurer need not provide liability coverage for automobiles other than the one described in the policy; therefore, although policy provisions purporting to limit the stacking of required coverage are invalid, provisions limiting the stacking of voluntary insurance are valid. *Id.* at 268–69, 376 S.E.2d at 279–80.

In the Supreme Court's most recent stacking case, *Ruppe v. Auto–Owners Insurance Company,* 329 S.C. 351, 496 S.E.2d 631 (1998), the court reviewed both *Jackson* and *Giles.* The court stated, "Statutorily required coverage is that which is required to be offered or provided." *Id.* at 353–54, 496 S.E.2d at 632. Further, the court explicated the holding in *Jackson:* "Dicta in *Jackson, supra,* states the rule that stacking of statutorily required coverage cannot be contractually prohibited. A review of current stacking cases, however, indicates this statement is an oversimplification of our stacking law and we decline to apply it here." *Id.* (footnote omitted).

 The court noted liability coverage is statutorily required by South Carolina law under section 38–77–140: "This section requires coverage under a policy issued to the owner of a motor vehicle for liability arising out of the ownership,

---

3. The liability limit in each of the four policies was $50,000.

maintenance, or use of that motor vehicle. Liability coverage, therefore, while statutorily required, *is limited to the particular vehicle for which it is purchased.* The extent of liability coverage is thus statutorily defined by the amount of coverage on the insured vehicle and does not encompass coverage applicable to other vehicles." *Id.* at 355, 496 S.E.2d at 633. The court stated that stacking of liability coverage for non-owned vehicles is controlled by its decision in *Jackson,* in which it held that liability coverage for *non-owned* vehicles is *not* statutorily required coverage and the parties are free to choose their own terms regarding this voluntary coverage. *Id.* at 355, 496 S.E.2d at 632–33.

Upon reviewing the insurance policies at issue here, we do not find the policy language ambiguous and hold the language prohibits the stacking of coverage for non-owned vehicles. Therefore, Sheila Moorer is entitled to recover under the limits of only one of the policies, a total of $50,000.

## CONCLUSION

We conclude liability coverage is due under the State Farm policies issued to Earline Neals for the injuries and resulting death of Eddie Lee Moorer. The policies limit coverage to "accidents," and we find that in determining whether an accident occurred, we should consider whether the incident was unexpected or unintended from the viewpoint of the injured party, applying *Chapman,* 263 S.C. 565, 211 S.E.2d 876. We therefore affirm the master's decision that liability coverage is available under the State Farm policies. However, we reverse the master's ruling that the policies may be stacked and hold Sheila Moorer's recovery is limited to $50,-000, the amount due under one of the policies. *Ruppe,* 329 S.C. 351, 496 S.E.2d 631 (1998); *Jackson,* 288 S.C. 335, 342 S.E.2d 603.

**AFFIRMED IN PART, REVERSED IN PART.**

HUFF and HOWARD, JJ., concur.