628 S.E.2d 475

David PEAGLER, as personal representative of the Estate of Kathy Marie Thompson, Plaintiff–Appellee,

v.

USAA INSURANCE COMPANY, Defendant–Appellant.

No. 26128.

Supreme Court of South Carolina.

Heard Nov. 2, 2005.
Decided March 20, 2006.

154

William O. Sweeny, III, and William R. Calhoun, Jr., both of Sweeny, Wingate & Barrow, P.A., of Columbia, for Defendant–Appellant.

J. Calhoun Land, IV, of Land, Parker & Welch, P.A., of Manning, for Plaintiff–Appellee.

Timothy A. Domin and Michael B. McCall, II, both of Clawson & Staubes, LLC, of Charleston, for State Farm Insurance Companies, Amicus Curiae.

## CERTIFIED QUESTION ANSWERED

Justice BURNETT.

We accepted this certified question regarding coverage for an accidental weapon discharge under an automobile insurance policy pursuant to Rule 228, SCACR.

## FACTUAL AND PROCEDURAL BACKGROUND

David Peagler (Plaintiff), as personal representative of the Estate of Kathy M. Thompson (Decedent), filed a declaratory judgment action against USAA Insurance Co. (Insurer), seeking a declaration that an automobile insurance policy provided coverage for the accident which occurred in this case. Insurer removed the case from state court to federal district court. From the decision of the district court, Plaintiff effected an appeal to the United States Court of Appeals for the Fourth Circuit. The facts, as stipulated by the parties, are drawn from the Court of Appeal's certification order.

Decedent was fatally injured on August 31, 2001, when her husband, Gregory A. Thompson (Thompson), was unloading two shotguns from the pickup truck Decedent was occupying. On that morning, Decedent and the couple's two sons, ages nine and fourteen, were preparing to depart from home to go to work and school. The automobile customarily driven by Decedent failed to start. Decedent and the boys planned to take Thompson's vehicle, a Ford F–150 4x4 super cab pickup truck.

Decedent entered the pickup truck, closed the door, started the engine, and wrapped the seatbelt around her. The older son got in the front passenger seat, closed the door, and

fastened his seatbelt. When the younger son opened the rear driver-side door to enter the truck, he saw two cased shotguns lying on the rear seat, with the barrels facing toward him. Decedent instructed him to go in the house and ask Thompson to come remove the shotguns.

Thompson opened the rear passenger-side door to enter the cab area. He lifted the shotguns off the rear seat and placed the barrel of the guns pointing toward the floor, with the butt ends pointing toward the truck's rear window. Thompson then helped his younger son load his bookbag and buckle his seatbelt. As Thompson picked up the shotguns and began to exit the vehicle, one of the shotguns discharged, striking Decedent. She died within seconds as a result of wounds received from the accidental discharge of the shotgun.

On the day before the accident, Thompson and the older son had placed the two shotguns into the truck and traveled to a hunting area to scout deer and practice shooting in preparation for the upcoming hunting season. Thompson and the older son returned the shotguns back to their cases and placed them on the rear seat to return home. The guns remained there during a ride of about forty miles over dirt and paved roads. Both shotguns were believed to be unloaded, however, one of them was not and that gun's safety was not engaged.

The parties further stipulate that the fact the truck's engine was running did not cause or contribute to the discharge of the shotgun; that Insurer did not specifically know Thompson was a hunter, but understood and foresaw that pickup trucks are frequently used in hunting; that the terms "transportation," "operation," and "use of vehicle" are not defined in the insurance policy; and that the term "occupying" is defined in the policy as "in, on, getting into or out of."

After entering into a stipulation of facts, both parties filed motions for summary judgment on whether the policy provided coverage under the facts of this case. The federal district court granted Plaintiff's motion, finding that coverage existed, and denied Insurer's motion. *Peagler v. USAA Ins. Co.*, 325 F.Supp.2d 620 (D.S.C.2004). Insurer appealed to the Fourth Circuit, which has certified the following question to this Court:

Did Decedent's fatal injury arise out of the "ownership, maintenance, or use" of a motor vehicle pursuant to S.C.Code Ann. § 38–77–140 (2002), such that the vehicle's insurance policy provides coverage for the accidental discharge of a shotgun which occurred during the unloading of firearms from a stationary, occupied vehicle which had been used for hunting purposes the previous day? [1]

## STANDARD OF REVIEW

[1] In answering a certified question raising a novel question of law, the Court is free to decide the question based on its assessment of which answer and reasoning would best comport with the law and public policies of this state and the Court's sense of law, justice, and right. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. § 14–3–320 and –330 (1976 & Supp.2004), and S.C.Code Ann § 14–8–200 (Supp.2004)); *Osprey, Inc. v. Cabana Ltd. Partnership,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same); *Antley v. New York Life Ins. Co.,* 139 S.C. 23, 30, 137 S.E. 199, 201 (1927) ("In [a] state of conflict between the decisions, it is up to the court to 'choose ye this day whom ye will serve'; and, in the duty of this decision, the court has the right to determine which doctrine best appeals to its sense of law, justice, and right.").

## LAW AND ANALYSIS

Insurer argues no coverage exists in this case because its policy does not define "loading and unloading" to be within the definition of "use" of the insured vehicle. Insurer contends it would constitute an erroneous and improper "rewriting" of the liability policy to include loading and unloading as covered uses. Insurer further argues that coverage does not exist under the analysis previously set forth by this Court in *State Farm Fire & Cas. Co. v. Aytes,* 332 S.C. 30, 503 S.E.2d 744 (1998).

---

1. We have redrafted the question to refine the issue before us.

Plaintiff contends that coverage exists in this case based on South Carolina and foreign authority which demonstrate that the loading and unloading of an insured vehicle are covered "uses" under the circumstances of this case, and further asserts that coverage properly exists under the *Aytes* analysis.

As an initial matter, we may easily resolve one argument raised by the parties. Insurer asserts that because "use" is not defined in the insurance policy, this Court would have to "rewrite" the policy in order to conclude that the loading and unloading of vehicles is a covered use.

Plaintiff argues this Court's precedent teaches that loading and unloading are covered uses when a vehicle is being used in a normal, foreseeable manner. Thus, coverage exists because Thompson was unloading shotguns from a pickup truck used in hunting activities, an expected and foreseeable use of such a vehicle. Plaintiff relies on *Home Indemnity Co. v. Harleysville Mut. Ins. Co.*, 252 S.C. 452, 166 S.E.2d 819 (1969) (policy which provided that "use of an automobile includes the loading and unloading thereof" included coverage, under the "complete operation doctrine," for injury to person struck by truck being moved for purposes of weighing and unloading it); *Wrenn & Outlaw, Inc. v. Employers' Liability Assurance Corp.*, 246 S.C. 97, 142 S.E.2d 741 (1965) (policy which provided that "use of an automobile includes the loading and unloading thereof" included coverage for injury to customer whose hand was injured when bagboy slammed customer's car door on it; loading of groceries, which required opening the door, was normal and expected use of the car); and *Coletrain v. Coletrain*, 238 S.C. 555, 121 S.E.2d 89 (1961) (policy which provided that use of an automobile for the purposes stated includes the loading and unloading included coverage for injury to wife whose hand was injured when husband slammed taxicab door on it).[2]

2. It is our impression from a review of numerous cases that automobile insurance policies routinely provided the loading or unloading of vehicles was a covered use until perhaps the late 1960s. Many insurance carriers apparently began modifying their standard policy forms to delete this provision, which ultimately resulted in courts relying on statutory requirements or other policy language when deciding whether coverage existed in accidental weapon discharge cases.

We reject both parties' reasoning and conclude the present case does not raise an issue of policy revision or interpretation. Unlike the South Carolina cases cited by Plaintiff, the policy in this case is silent on the issue; it simply says nothing about whether loading or unloading a vehicle is a covered use. Therefore, the issue must be resolved based on statutes which mandate coverage for damages arising out of the "ownership, use, or maintenance" of a motor vehicle, and cases arising under those statutes which establish a method of resolving the issue. *Cf. Hogan v. Home Ins. Co.,* 260 S.C. 157, 194 S.E.2d 890 (1973) (statute controls when provision in automobile policy excluding coverage conflicts with statute).

Turning to the statute-based question, South Carolina Code Ann. 38–77–140 (2002) provides that "[n]o automobile insurance policy may be issued or delivered in this State to the owner of a motor vehicle or may be issued or delivered by an insurer licensed in this State upon any motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles. . . ." *See also* S.C.Code Ann. § 38–77–30(10.5) (2002) ·(" 'policy of automobile insurance' or 'policy' means a policy or contract for bodily injury or property damage liability insurance issued or delivered in this State covering liability arising from the ownership, maintenance, or use of any motor vehicle . . ."); S.C.Code Ann. 38–77–142 (2002) (tracking the "ownership, maintenance, or use" language of Section 38–77–140 in requiring certain provisions in automobile insurance policies); S.C.Code Ann. 38–77–141 (2002) (requiring notice to policyholder of increased premium for uninsured and underinsured motorist coverage "to protect you against liability arising out of the ownership, maintenance, or use of the motor vehicles covered by this policy," unless otherwise rejected by policyholder).

▪ We enunciated a three-part test in *Aytes* to determine whether an injury arises out of the "ownership, maintenance, or use" of a motor vehicle. The party seeking coverage must show (1) a causal connection exists between the vehicle and the injury, (2) no act of independent significance breaks the causal link between the vehicle and the injury, and (3) the

vehicle was being used for transportation purposes at the time of the injury. *Aytes,* 332 S.C. at 33, 503 S.E.2d at 745. To date, this issue has been addressed by our appellate courts primarily in the context of various types of assault involving intentional conduct by an assailant; it has not been addressed in the context of an accident involving unintentional conduct, with one exception.[3]

In analyzing whether an injury arose out of the ownership, maintenance, or use of a vehicle, "no distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." *Home Ins. Co. v. Towe,* 314 S.C. 105, 107, 441 S.E.2d 825, 827 (1994); *Wright v. North Area Taxi, Inc.,* 337 S.C. 419, 424, 523 S.E.2d 472, 474 (Ct.App. 1999). The three-part test in *Aytes* applies regardless of whether the injury occurred as a result of an intentional assault or an accident. The focus is on the extent of the role, if any, the vehicle played in causing the injuries or damage, or whether a particular activity is a covered use as required by statute or a policy provision. *See also Chapman v. Allstate Ins. Co.,* 263 S.C. 565, 211 S.E.2d 876 (1975) (when an insured is intentionally injured and the injury from insured's viewpoint is unforeseen and not the result of his own misconduct, the

---

[3]. *See State Farm Mut. Auto. Ins. Co. v. Bookert,* 337 S.C. 291, 523 S.E.2d 181 (1999) (assault involving intentional firing of weapon); *Doe v. S.C. State Budget and Control Bd.,* 337 S.C. 294, 523 S.E.2d 457 (1999) (sexual assault); *Aytes,* 332 S.C. 30, 503 S.E.2d 744 (assault involving intentional firing of weapon); *Home Ins. Co. v. Towe,* 314 S.C. 105, 441 S.E.2d 825 (1994) (assault involving intentional throwing of bottle); *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992) (assault involving intentional firing of weapon); *Travelers Indemnity Co. v. Auto World of Orangeburg, Inc.,* 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999) (assault involving intentional firing of weapon); *Wright v. North Area Taxi, Inc.,* 337 S.C. 419, 523 S.E.2d 472 (Ct.App.1999) (assault involving intentional firing of weapon); *Carraway v. Smith,* 321 S.C. 23, 467 S.E.2d 120 (Ct.App.1995) (assault involving intentional firing of weapon); *Hite v. Hartford Accident Indem. Co.,* 288 S.C. 616, 344 S.E.2d 173 (Ct.App.1986) (assault using a vehicle).

The one exception is *Canal Ins. Co. v. Ins. Co. of North America,* 315 S.C. 1, 431 S.E.2d 577 (1993). In that case, a truck-mounted crane tipped over and damaged a building. Answering a question we had declined to reach in *Howser,* we held the accident was not covered by the liability policy on the truck crane because it was not being used for transportation purposes at the time of the injury.

general rule is that the injury is accidentally sustained within the meaning of the ordinary accident insurance policy and the insurer is liable therefor in the absence of a policy provision excluding such liability); *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 56–59, 496 S.E.2d 875, 881–82 (Ct.App. 1998) (fatal injuries that victim suffered when shot by insured, who was a passenger in non-owned vehicle, resulted from an "accident" within meaning of insured's automobile liability insurance policies, thus liability coverage existed; "accident" is defined from point of view of victim rather than insured); *S.C. Farm Bureau Mut. Ins. Co. v. Mumford*, 299 S.C. 14, 382 S.E.2d 11 (Ct.App.1989) (insurer may not exclude coverage of intentional acts from statutorily required policies of insurance coverage).

■ The determination of whether coverage exists in this case rises or falls on the analysis of the first *Aytes* factor. A causal connection between the vehicle and the injury must exist in order for an injury to be covered by an automobile insurance policy. In this context, we have held that causal connection means: (a) the vehicle was an "active accessory" to the injury; (b) the vehicle was something less than the proximate cause but more than the mere site of the injury; and (c) the injury was foreseeably identifiable with the normal use of the vehicle. *State Farm Mut. Auto. Ins. Co. v. Bookert*, 337 S.C. 291, 293, 523 S.E.2d 181, 182 (1999) (citing *Aytes* ). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred." *Aytes*, 332 S.C. at 33, 503 S.E.2d at 746.

In *Bookert*, we found no causal connection between the vehicle and the injury when a soldier fired gunshots from a vehicle which was moving forward while in the traffic lane at a fast food restaurant, injuring a pedestrian. The assault was not foreseeably identifiable with the normal use of an automobile. *Bookert*, 337 S.C. at 293, 523 S.E.2d at 182. Similarly, in *Aytes*, an assailant used a car to transport the victim to a location with the expressed intent of killing the victim. The assailant got out of the car, took from the victim a handgun she had retrieved from the car's glove compartment and shot at the victim as she sat in the car, injuring her. We held, in

part, the assault was not covered by the insurance policy because the parked car was not an "active accessory" in the shooting; it was merely the site of the injury. *Aytes*, 332 S.C. at 33–35, 503 S.E.2d at 746.

Our appellate courts have found no causal connection between the vehicle and the injury in similar assault cases. *See Doe v. S.C. State Budget and Control Bd.*, 337 S.C. 294, 523 S.E.2d 457 (1999) (no causal connection between vehicle and injury where police officer forced female motorist to engage in sexual activity in the officer's parked cruiser and also used the cruiser to drive both to another location to engage in sexual activity; vehicle was not an active accessory in the assault); *Travelers Indemnity Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999) (no causal connection between vehicle and injury where deaths occurred from gunshots fired by assailant standing outside of parked car; vehicles were not active accessories in the assault); *Wright*, 337 S.C. 419, 523 S.E.2d 472 (no causal connection between vehicle and injury where taxi driver was fatally shot by two fare-paying passengers; vehicle was not active accessory in the assault, but was merely site of the shooting); *Carraway v. Smith*, 321 S.C. 23, 467 S.E.2d 120 (Ct.App.1995) (no causal connection between vehicle and injury where driver of car was injured when bullet fired by bystander on sidewalk shattered his windshield; any causal link was broken by assailant exiting vehicle in front of motorist and conversing on sidewalk with another person for several minutes before shooting occurred); *Hite v. Hartford Accident Indem. Co.*, 288 S.C. 616, 344 S.E.2d 173 (Ct.App.1986) (no causal connection between vehicle and injury where insured, an automobile dealership employee, left his idling vehicle and walked fifty feet to instruct another motorist to remain at the dealership because the motorist had backed into a new truck, and motorist's car struck plaintiff as it left the scene; insured's vehicle played no role in the incident); *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 986–89 (4th Cir.1985) (no causal connection, under South Carolina law, between vehicle and injury when husband, a passenger in a truck, caused the truck driver to collide with his wife's vehicle and husband jumped out of truck and shot his wife in her vehicle; court concluded use of truck for

transportation to scene of crime was merely incidental and not a causative factor in producing wife's death).

There is a distinction between the above cases and those in which coverage exists because the vehicle was actively used to perpetrate an assault or injury on another person. *See Towe,* 314 S.C. 105, 441 S.E.2d 825 (finding causal connection between vehicle and injury where victim, who was driving an oncoming tractor, suffered injuries when the steering wheel of his tractor was struck by a bottle thrown by passenger in passing car; car was an active accessory that gave rise to the injury); *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992) (finding causal connection between vehicle and injury where insured suffered gunshot wounds during vehicular chase by an unknown assailant using an unidentified vehicle).

We have considered, but decline to follow, precedent in which other courts have found that insurance coverage exists for accidental injuries or deaths which occur during the loading and unloading of a firearm from a vehicle, despite the lack of a policy provision which addressed whether the loading or unloading of a vehicle was a covered use. *See Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308, 310–11 and n. 1 (Me.1987) (injury which occurred during unloading of shotgun from insured's automobile was covered under automobile policy's "ownership, maintenance or use" clause where automobile was being used to transport insured and his companion on hunting trip, a reasonable and foreseeable use of the vehicle; fact that policy did not define "use" in terms of loading or unloading did not affect the analysis); *Kohl v. Union Ins. Co.,* 731 P.2d 134, 135–37 and n. 2 (Colo.1986) (injuries caused by accidental discharge of weapon as motorist removed it from vehicle's gun rack in order to store it safely for travel arose out of ownership, maintenance, or use of vehicle; motorist was using vehicle in ordinary manner that was not foreign to its inherent purpose and thus injuries were covered under automobile insurance policy); *Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis.2d 148, 216 N.W.2d 205, 210 (1974) (injuries caused by accidental discharge of weapon as passenger unloaded the rifle from parked van in order to go hunting were covered by automobile insurance policy; use of vehicle for hunting purposes was a

reasonable and expected use, and the loading and unloading of a firearm was a normal incident to such use); *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15–16 (Mo.App.1980) (analyzing distinctions courts have drawn in accidental weapon discharge cases involving vehicles and concluding courts generally have found insurance coverage to exist when the discharge occurs during loading and unloading of vehicles); *Shinabarger v. Citizens Mut. Ins. Co.*, 90 Mich.App. 307, 282 N.W.2d 301, 306 (1979) (in cases involving accidental discharge of firearms, courts generally have been more liberal in finding a causal connection between use of the vehicle and injury when accident occurs during the loading or unloading process than when accident simply occurs in or near the vehicle, but not during loading).

We decline to depart from or modify the *Aytes* analysis in this accidental weapon discharge case. The injury was foreseeably identifiable with the normal use of the pickup truck. Many vehicles in South Carolina, and certainly many pickup trucks, are used for hunting purposes. Using a vehicle to transport firearms to and from hunting grounds is not an abnormal or unanticipated use of a vehicle. However, Plaintiff has not demonstrated the truck was an active accessory to the injury. The truck was not actively used or involved in causing the injury; it was merely the site of the injury. As stated in *Aytes*, "[t]he required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred." *Aytes*, 332 S.C. at 33, 503 S.E.2d at 746. Plaintiff has failed to show, under the facts as stipulated, that a causal connection exists between the pickup truck and the accidental shooting of Decedent.

Our resolution of the causal connection factor makes it unnecessary to analyze the remaining *Aytes* factors, *i.e.*, whether an act of independent significance broke the causal link between the vehicle and the injury, and whether the vehicle was being used for transportation purposes at the time of the injury. *See Whiteside v. Cherokee County School Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (appellate court need not address remaining issues when resolution of prior issue is dispositive).

## CONCLUSION

We answer "no" to the question certified by the Court of Appeals. Decedent's fatal injury, under the facts as stipulated, did not arise out of the "ownership, maintenance, or use" of a motor vehicle pursuant to Section 38-77-140, such that the vehicle's insurance policy provides coverage for the accidental discharge of a shotgun which occurred during the unloading of firearms from a stationary, occupied vehicle which had been used for hunting purposes the previous day. Plaintiff has not shown that a causal connection exists between the pickup truck and the accidental shooting of Decedent. Consequently, the automobile insurance policy does not provide coverage for Decedent's accidental death.

**CERTIFIED QUESTION ANSWERED.**

Acting Justices H. SAMUEL STILWELL and JOHN W. KITTREDGE, concur.

WALLER, J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Justice WALLER, dissenting.

I respectfully dissent. I would hold the injury here arose out of the "ownership, maintenance, and use" of the pickup truck.

Under the three-prong test set forth by this Court in *State Farm Fire & Cas. Co. v. Aytes,* 332 S.C. 30, 503 S.E.2d 744 (1998), the party seeking coverage must first establish a causal connection between the vehicle and the injury. Second, there must exist no act of independent significance breaking the causal link. And third, it must be shown that the vehicle was being used for transportation purposes at the time of the accident. *State Farm Fire & Cas. Co. v. Aytes,* 332 S.C. 30, 503 S.E.2d 744, 745 (1998).

In my opinion, the unloading of the firearms from the vehicle, in preparation for transportation of the children to school, with the motor running, provides a sufficient causal connection to warrant coverage. *See Taliaferro v. Progressive Specialty Ins. Co.,* 821 So.2d 976, 979–80 (Ala.2001) (because the principal use of an automobile is transportation—being

dependent upon the operations of loading and unloading—the act of removing a rifle was an inherent use of a pickup truck for purposes of insurance coverage); *Kohl v. Union Ins. Co.,* 731 P.2d 134 (Colo.1986) (where accident occurred as truck owner lifted rifle out of the jeep's gun rack in preparation to unload rifle and store it for journey home, owner's actions were intimately related to his use of the vehicle as transportation for himself and his rifle); *Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974) (loading and unloading of guns from van constitutes "use" of the vehicle in spite of the absence of any specific "loading and unloading" clause from the policy).

Other courts have reached similar conclusions in cases of accidental weapon discharges. *See Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.,* 521 A.2d 308, 310–11 and fn. 1 (Me.1987) (injury which occurred during unloading of shotgun from insured's automobile was covered under automobile policy's "ownership, maintenance or use" clause where automobile was being used to transport insured and his companion on hunting trip, a reasonable and foreseeable use of the vehicle; fact that policy did not define "use" in terms of loading or unloading did not affect the analysis); *Cameron Mut. Ins. Co. v. Ward,* 599 S.W.2d 13, 15–16 (Mo.App.1980) (analyzing distinctions courts have drawn in accidental weapon discharge cases involving vehicles and concluding that courts generally have found insurance coverage to exist when the discharge occurs during loading and unloading of vehicles); *Shinabarger v. Citizens Mut. Ins. Co.,* 90 Mich.App. 307, 282 N.W.2d 301, 306 (1979) (in cases involving accidental discharge of firearms, courts generally have been more liberal in finding a causal connection between use of the vehicle and injury when accident occurs during the loading or unloading process than when accident simply occurs in or near the vehicle, but not during loading).

Further, I would hold that no act of independent significance broke the causal link between the vehicle and the injury. There was no intervening cause wholly disassociated from, independent of, or remote from the use of the truck in this case. On the contrary, the injury here occurred due to the insured's foreseeable use of unloading his vehicle of the shotguns loaded in the back. *Accord Allstate Ins. Co. v. Truck Ins. Exchange,* 63 Wis.2d 148, 216 N.W.2d 205 (1974) (cover-

age provided where a fatal shooting occurred while a loaded weapon was being removed from a truck during a hunting trip).

Lastly, I would find the pickup truck was being used for transportation purposes when the injury occurred. Kathy Thompson and her children were sitting in the car, ready to leave home and go to work and school. They were preparing to drive away, and the engine was running. As the District Court in this case noted, under "USAA's theory coverage conceivably would not extend to injuries sustained under any factual scenario where a vehicle is parked only momentarily or, far worse, where injuries are sustained while a vehicle is stationary at an intersection during the course of travel." *Peagler v. USAA Ins. Co.*, 325 F.Supp.2d 620, 627 (D.S.C. 2004). Clearly, the vehicle here was being used for transportation.

I would hold that the "ownership, maintenance, or use" of a vehicle includes the loading and unloading of firearms after the vehicle has been used for hunting purposes, a use which is foreseeably identifiable with normal use of the vehicle. Accordingly, I would conclude insurance coverage exists in this case. I respectfully dissent.

PLEICONES, J., concurs.