523 S.E.2d 472

**Jewel WRIGHT, as Personal Representative of the Estate of Annie Rogers, and Donna Dudley, Appellants,**

v.

**NORTH AREA TAXI, INC., Respondent.**

No. 3060.

Court of Appeals of South Carolina.

Submitted Oct. 5, 1999.

Decided Oct. 18, 1999.

420

Geoffrey H. Waggoner, of Charleston, for appellants.

James Gonzales, of Gonzales & Gonzales, of North Charleston, for respondent.

GOOLSBY, Judge:

This is a declaratory judgment action in which the parties seek to determine whether a self-insurer, North Area Taxi

Company, is liable for an accident involving its vehicle. The parties stipulated to the facts and the trial court granted judgment to North Area Taxi, finding as a matter of law that the damages sustained did not arise out of the ownership, maintenance, or use of the vehicle. We affirm in part and reverse in part.[1]

## FACTS

Annie Rogers leased and operated a 1988 Plymouth Diplomat taxi owned by North Area Taxi, Inc., a qualified self–insurer. Around 9:45 p.m. on December 21, 1996, Rogers picked up and transported two fares, Dwayne L. Robinson and Herbert Hamilton. Robinson and Hamilton, in a planned and joint effort, attempted to rob Rogers while they were guests in and occupants of the taxi. Rogers was shot during the attempted robbery. As a result, Rogers lost control of the taxi and crashed into a parked vehicle owned by Dudley, causing damage to Dudley's vehicle. Rogers eventually died from her injuries.

Jewel Wright, as the personal representative of Rogers' estate, and Dudley brought this action seeking a declaration that Rogers, who was killed, and Dudley, who suffered property damage, should benefit from liability coverage afforded under the terms of the minimum liability policy mandated by law for self-insured vehicles.

## ISSUE

Did the trial court err in holding that the planned robbery and shooting of a taxi driver by two fare-paying passengers did not constitute the requisite "causal connection" between the "use" of the vehicle and the damages inflicted, and, therefore, did not trigger liability coverage under the state's mandatory insurance laws?

## DISCUSSION

No automobile insurance policy may be issued in this state unless it contains a provision protecting the person defined as

---

**1.** Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

an insured against "loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of the motor vehicle. S.C.Code Ann. § 38–77–140 (Supp.1998). An insured is "any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies *and a guest in the motor vehicle* to which the policy applies...." S.C.Code Ann. § 38–77–30(6) (Supp.1998) (emphasis added).[2]

Under South Carolina law, however, a company that has more than twenty-five motor vehicles registered in its name may be a self-insurer upon satisfying the statutory requirements. S.C.Code Ann. § 56–9–60 (Supp.1998). As a self-insurer, North Area Taxi, was required to provide the same minimum protection to the public as the minimum limits required by a statutory liability policy. *Wright v. Smallwood,* 308 S.C. 471, 419 S.E.2d 219 (1992); *Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.,* 268 S.C. 472, 234 S.E.2d 870 (1977). Technically, a self-insurer is not an insurer at all; rather, a self-insurer provides a substitute for an insurance policy. *Wright,* 308 S.C. at 474, 419 S.E.2d at 221.

At the time of the accident, the statutorily required coverage was a minimum of $15,000 for bodily injury to one person in any one accident, $30,000 for bodily injury to two or more persons in any one accident, and $5,000 for injury to or destruction of the property of others in any one accident. S.C.Code Ann. § 38–77–140 (1989).[3]

Wright and Dudley will be covered against loss from liability imposed by law for damages arising out of the ownership, maintenance, or use of the taxi only if a three-pronged test is satisfied. First, the parties seeking coverage must establish a causal connection between the vehicle and the injury. *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992). Second, no act of independent

2. The issue of whether the carjackers remained guests of the insured after they assaulted her was not before the trial court; hence, we do not reach this issue.

3. This section has since been amended effective March 1, 1999, to require $10,000 in property damage coverage. S.C.Code Ann. § 38–77–140 (Supp.1998).

significance can occur that breaks the causal link. *Id.* Third, the vehicle must have been used for transportation at the time of the accident. *Canal Insurance Co. v. Insurance Co. of North America,* 315 S.C. 1, 431 S.E.2d 577 (1993).

## I. Wright's Claim

Initially, Wright must establish a causal connection between the vehicle and the injury. "The test for determining whether an injury arose out of the use of a vehicle turns on the causal connection between the vehicle and the injury. No distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." *Home Ins. Co. v. Towe,* 314 S.C. 105, 107, 441 S.E.2d 825, 827 (1994) (citation omitted).

A causal connection is established if it is shown that the vehicle was an "active accessory" to the assault. *State Farm Fire & Cas. Co. v. Aytes,* 332 S.C. 30, 503 S.E.2d 744 (1998). In *Aytes,* the court observed:

The causation required is something less than proximate cause and something more than the vehicle being the mere site of the injury. The injury must be foreseeably identifiable with the normal use of the vehicle. The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred.

*Id.* at 33, 503 S.E.2d at 745–46 (citations omitted).

In this case, Wright cites *State Farm Mut. Auto Ins. v. Bookert,* 330 S.C. 221, 499 S.E.2d 480 (Ct.App.1997), *cert. granted,* (Nov. 6, 1998), for her argument that the taxi was an "active accessory" to the assault and that the use of the vehicle as a taxi facilitated Rogers' being lured to a location of the assailants' choosing. In *Bookert,* however, the injury was "foreseeably identifiable" with the normal use of the vehicle. The court reasoned that in transporting the assailants and their weapons to the scene of the shooting, the vehicle was used as a "launching pad" for the gunshots. *Id.* at 232, 499 S.E.2d at 486. Moreover, the vehicle in *Bookert* was "not the situs of the accident nor was it merely the means by which the assailant traveled to the situs." *Id.*; see also *Travelers In-*

*demnity Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 511 S.E.2d 692 (Ct.App. 1999) (finding that there was no causal connection as the vehicles were not "active accessories," nor were they being used for transportation at the time of the injury).

■ Unlike *Bookert*, the vehicle here did not serve as a launching pad for the assault. The vehicle served merely as the situs of the shooting. The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred. *Aytes*, 332 S.C. 30, 503 S.E.2d 744, (quoting *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 989 (4th Cir.1985)); *see also Doe v. South Carolina State Budget and Control Broad*, 329 S.C. 214, 494 S.E.2d 469 (Ct.App.1997), *cert. granted*, (Oct. 21, 1998) (explaining that the situs of the injury is not necessarily a causal link even though it is connected spatially to the harm).

In *Thornton v. Allstate Ins. Co.*, 425 Mich. 643, 391 N.W.2d 320 (1986), the Michigan Supreme Court addressed an almost identical issue, finding the use of a motor vehicle as a motor vehicle did not cause the injury to the taxi driver. Thornton was a taxi driver who received a call directing him to pick up a fare. Upon his arrival, the passengers entered the car and gave Thornton a specific destination. As he drove away from the curb, one passenger shot and robbed him. Thornton sued under the taxi company's first-party personal injury protection (PIP) benefits asserting that his injuries arose out of his ownership, operation, maintenance, or use of the vehicle. He argued the taxi was an instrumentality of the injury. The Michigan Supreme Court rejected this argument.

> The connection in this case between the debilitating injuries suffered by Thornton and the use of the taxicab as a motor vehicle is no more than incidental, fortuitous, or 'but for.' The motor vehicle was not the instrumentality of the injuries. The motor vehicle here was merely the situs of the armed robbery—the injury could have occurred whether or not Thornton used a motor vehicle as a motor vehicle. The relation between the functional character of the motor vehi-

cle and Thornton's injuries was not direct—indeed, the relation is at most incidental.

391 N.W.2d at 327–28 (citations omitted).

The *Thornton* court conceded the injuries were likely "foreseeably identifiable" with the occupational or commercial use of a motor vehicle as a taxi, but the relation of the injury to the functional use of a motor vehicle as a motor vehicle was merely incidental and fortuitous. "The mere foreseeability of an injury as an incident to a given use of a motor vehicle is not enough to provide ... coverage where the injury itself does not result from the use of the motor vehicle as a motor vehicle." *Id.* at 328 [4]; *see also Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 989 (4th Cir.1985) ("An assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the normal use of a motor vehicle.").

Similarly, Wright noted a special danger confronting taxi drivers. "As a cab driver, the danger for Annie Rogers is precisely the issue in this case." We recognize that the potential for injury to taxi drivers is foreseeably identifiable. The danger, however, is inherent in the occupation and not in the use of the motor vehicle as a motor vehicle.

Wright also argues that no act of independent significance was present to interrupt the causal link because the use of the vehicle and the act for which coverage is sought were "inextricably linked" as one act. She explains that Rogers was a taxi driver whose assailants were able to summon her to gain entrance to and ride behind her in her car by virtue of their status as fare-paying guests. Further, she maintains that the moving vehicle was essential to accomplishing the crime of shooting and robbing Rogers. We disagree.

---

4. The *Thornton* court's construction of the statutory language, "use of a motor vehicle as a motor vehicle," found in Michigan's PIP statute, is virtually identical to the *Aytes* court's construction of the statutory language, "use of these motor vehicles," found in the automobile insurance statute regarding bodily injury and property damage. *Compare* Mich.Comp.Laws Ann. § 500.3105(1) (West 1993) ("use of a motor vehicle as a motor vehicle") *with* S.C.Code Ann. § 38–77–140 (Supp. 1998) ("use of these motor vehicles") as construed in *State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 33, 503 S.E.2d 744, 746 (1998) ("normal use of the vehicle").

In *Doe*, this court held that a police officer's sexual assaults were acts of independent significance. "The injuries to [the victims] resulted from [the police officer's] assaults of them, not from his use of the vehicle. To hold otherwise would subject automobile liability carriers to exposure for any criminal act committed in the insured vehicle." *Doe*, 329 S.C. at 219, 494 S.E.2d at 472.

Likewise, the assault of the gunmen broke any causal connection between the vehicle and Rogers' injury because it arose from an act of independent significance. The fatal injuries that Rogers sustained were unrelated to any use of the vehicle. The same injuries could have occurred when the vehicle was parked, or otherwise not moving, or when Rogers or the gunmen were standing outside of the vehicle.

## II. Dudley's Claim

■ Unlike Wright's claim, however, Dudley's claim arises out of the operation of the motor vehicle. Dudley's vehicle sustained damages when Rogers' taxi careened into it following the shooting. That the accident was caused by the assault on Rogers is irrelevant in determining Dudley's coverage.

In *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir.1985), the assailant was riding as a passenger in a truck when he intentionally shoved the driver, causing the truck to swerve into the assailant's wife's oncoming car. Following the accident, the assailant jumped out of the truck and shot and killed his wife. The wife's estate brought an action under various liability insurance policies. The insurance companies sought declaratory judgment as to coverage for the injuries.

The Fourth Circuit, interpreting South Carolina law, held that there was no coverage for the shooting related injuries because they did not arise out of the use of the vehicle. There was no causal connection between the injuries and the use of the automobiles as automobiles. *Id.* at 987.

Conversely, the court held that summary judgment was inappropriate respecting claims arising out of the collision that preceded the shooting. Although the court found non-coverage under two of the liability policies,[5] it found coverage under

---

5. The court found non-coverage under the Nationwide *garage* policy because the collision did not arise out of the garage operations. *Na-*

428

the victim's UIM policy and stated, "[b]ecause the collision, as opposed to the shooting, clearly arose out of the 'use of an auto as an auto' ... any injuries resulting from the collision itself are on that basis covered under the policy." *Id.* at 991.

The same principle applies to Dudley. Because the collision arose out of the use of a motor vehicle as a motor vehicle, the damages sustained by Dudley resulting from the collision itself should be covered by the self-insurer.

**AFFIRMED IN PART, REVERSED IN PART.**

CONNOR and ANDERSON, JJ., concur.

---

*tionwide,* 779 F.2d at 991. Additionally, the court found non-coverage under the vehicle in which the assailant was riding when he caused the collision because the policy contained an intentional act exclusion. *Id.*