**NATIONWIDE PROPERTY & CASUALTY COMPANY Plaintiff,**

v.

**Joe LAIN, as Personal Representative of the Estate of Melanie Lain, and Leonard Herbert Oliver, III, Defendants.**

No. C.A. 2:04–23045–23.

United States District Court, D. South Carolina, Charleston Division.

Nov. 28, 2005.

---

Michael Baxter McCall, II, and Timothy A. Domin, Clawson and Staubes, Charleston, SC, for Plaintiff.

Anne L. Peterson–Hutto, William A. Green Law Office, N. Charleston, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court upon cross motions for summary judgment filed by Plaintiff Nationwide Property and Casualty Company ("Nationwide") and Defendants Joe Lain ("Lain") and Leonard Herbert Oliver, III ("Oliver"). For the reasons set forth below, Plaintiff Nationwide's Motion for Summary Judgment is granted and Defendants Motion for Summary Judgment is denied.

## BACKGROUND

Some time before March 15, 2003, Melanie Lain and Defendant Oliver began dating. On Friday, March 14, 2003, Ms. Lain and Oliver went out together; while out, the couple drank and argued. At some point, the couple headed home to the house they shared. However, after Oliver got out of the vehicle, Ms. Lain locked the doors and began to drive away. Oliver then punched out the driver's side window and told Ms. Lain to move over and let him drive. At some point while driving, Ms. Lain started to open her door so Oliver stopped the car. The couple got out of the car and argued in the middle of the road. Eventually, Ms. Lain got back in

the car, in the backseat, and Oliver then drove behind a church on Folly Road. After hitting a telephone poll, Oliver parked behind the church. According to Oliver's statement, he "then got out of the front seat and got into the backseat to talk to" Ms. Lain. Ms. Lain kept saying she was going to call another man named Tony, and Oliver "lost it and was enraged," putting his hands over Ms. Lain's mouth and throat, thereby causing her death by strangulation.

On September 10, 2004, Ms. Lain's father, Defendant Joe Lain, as personal representative of the estate of Ms. Lain, filed a summons and complaint in state court alleging causes of action for wrongful death and survival against Oliver. On November 18, 2004, Nationwide filed a declaratory judgment action in this court to determine whether a policy of automobile insurance issued to Ms. Lain provides coverage with regard to Ms. Lain's strangulation. Specifically, Nationwide seeks declarations that Defendant Oliver, who confessed to the murder of Ms. Lain, is not an insured under the policy issued to her, that the injuries to Ms. Lain resulted from Oliver's intentional act, and that the injuries to Ms. Lain did not arise out of the ownership, maintenance, or use of any motor vehicle for the purpose of liability, uninsured, or underinsured motor vehicle coverage.[1] After the parties entered into

---

1. The Liability section of the Nationwide policy issued to Ms. Lain provides:

 **We** will pay for damages which **you** are legally liable as a result of an accident arising out of the:
 1. ownership;
 2. maintenance or use; or
 3. loading or unloading;
 of **your auto**. A **relative** also has this protection while using **your auto**. So does any person who is liable for use of **your auto** while used with **your** permission.

 Because the parties agree that Oliver's use was non-permissive, this section is inapplica-

ble and renders moot the discussion of any intentional acts exclusion.

The Uninsured Motorist and Underinsureds Motorist section of the policy provides:

 **We** will pay damages, including derivative claims, because of **bodily injury** suffered by **you** or a **relative**, and because of **property damage**. Such damage must be due by law to **you** or a **relative** from the owner or driver of:
 1. an **uninsured motor vehicle**; or
 2. an **underinsured motor vehicle** if the **policyholder** has selected Underinsured Motor-

a stipulation of facts, both parties filed motions for summary judgment.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses

[that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

The fundamental issue before the court is whether Ms. Lain's death arose out of the ownership, maintenance, and use of the vehicle in which Defendant Oliver strangled her. In light of relevant South Carolina case law, the court finds that it does not.

■ Under South Carolina law, "[n]o automobile insurance policy may be issued or delivered in this state ... unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of a motor vehicle. S.C.Code Ann. § 38–77–140. Additionally, pursuant to *State Farm & Cas. Co. v. Aytes,* an injury arises out of the ownership, maintenance, or use of an automobile if: (1) there is a causal connection between the vehicle and the injury; (2) no act of independent significance occurred which broke the causal link; and (3) the vehicle was being used for transportation at the time of the assault. 332 S.C. 30, 33, 503 S.E.2d 744, 745 (1998). Of course, the parties' disagreement on the application of this test brings the matter before the court. Plaintiff contends that none of the elements are satisfied by the circumstances of this case while Defendants contend that all elements are satisfied. As discussed below, the court is of the opinion that not all elements are satisfied, and therefore, Ms. Lain's death is not covered under the terms of the subject policy.

ists coverage, as shown in the declarations and has paid the required premium for such coverage.

Damages must result from an accident arising out of the ownership, maintenance, or use of the **uninsured motor vehicle or underinsured motor vehicle.**

### 1. Causal Connection

■ The first element of the *Aytes* test requires a causal connection to exist between the vehicle and the injury. "In this context, causal connection means: (a) the vehicle was an 'active accessory' to the assault; and (b) something less than proximate cause but more than mere site of the injury; and (c) that the 'injury must be foreseeably identifiable with the normal use of [the vehicle].'" *State Farm Mut. Ins. Co. v. Bookert,* 337 S.C. 291, 523 S.E.2d 181 (1999) (citing *Aytes,* 332 S.C. at 33, 503 S.E.2d at 745–46); *see also Peagler v. USAA Ins. Co.,* 411 F.3d 469, 472 (4th Cir.2005); *Doe v. South Carolina State Budget & Control Bd.,* 337 S.C. 294, 297, 523 S.E.2d 457, 458 (1999); *Wausau Underwriters Ins. Co. v. Howser,* 309 S.C. 269, 422 S.E.2d 106 (1992). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is that fact that the injured person was an occupant of the vehicle when the [injury] occurred." *Aytes,* 332 S.C. at 33, 503 S.E.2d at 745–46 (internal citations omitted). "No distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." *Wright v. North Area Taxi, Inc.,* 337 S.C. 419, 424, 523 S.E.2d 472, 474 (S.C.Ct.App.1999) (citing *Home Ins. Co. v. Towe,* 314 S.C. 105, 107, 441 S.E.2d 825, 827 (1994)).

In *Aytes,* an argument developed between Mr. Aytes and Ms. Dawson when the couple was on the property of Mr. Aytes's mother. At some point, Mr. Aytes forced Ms. Dawson into her car, which he was forbidden to drive, and he drove Ms. Dawson to an area of his mother's property with the expressed intent of killing her. When Mr. Aytes got out of the car and went around to the passenger side, Ms. Dawson retrieved a gun from the glove compartment to defend herself. However, Mr. Aytes gained control of the gun and fired it while he was standing outside of the vehicle. Ultimately, the court found the following:

> There was not a causal connection in this case as the vehicle was not an active accessory, nor was it being used for transportation at the time of the injury. Further, if there was a causal link, it was broken when the assailant exited the vehicle. The only connection between the car and the injury is the fact that Dawson was sitting in the car when she was shot. Therefore, we do not find Dawson's injuries resulted from the ownership, maintenance, or use of her vehicle.

332 S.C. at 32–35, 503 S.E.2d at 745–46.

In the case *sub judice,* Nationwide claims that "[t]he facts of *Aytes* are too similar to ignore." (Pl.'s Response to Defs.' Mot. at 3.) Specifically, Nationwide contends that the vehicle was not an active accessory because the only connection between it and Ms. Lain's death is that Ms. Lain was seated in the backseat when Oliver strangled her. Nationwide also suggests that the vehicle played no role in the creation of the injury because "[t]he nature of the assault had nothing to do with the operational nature of a vehicle as a vehicle nor the functional characteristics of a motor vehicle." (Pl.'s Response to Defs.' Mot. at 5.)

In contrast, Defendants attempt to distinguish the facts of this case from *Aytes* and claim that a causal connection does exist because the vehicle was an active accessory. Specifically, Defendants contend that the vehicle was not the mere site of Ms. Lain's injuries, but rather that Oliver used the vehicle "to frighten [Ms. Lain], take control of her and carry her to a remote location where Oliver climbed into the back seat of the vehicle to kill her while continuing the argument that began

when Oliver punched out the vehicle's window." (Defs.' Response to Pl.'s Mot. at 4.) In addition to claiming that Ms. Lain was the victim of a long, continuous assault, Defendants also state that "the parties never exit the vehicle."[2] (Defs.' Response to Pl.'s Mot. at 4.)

Ultimately, the court concludes that no causal connection exists. It seems that Ms. Lain's vehicle was merely the site of the injury and not an active accessory. Moreover, even if the vehicle was an active accessory as Defendants contend, the use of the vehicle for transportation to the location where Oliver strangled Ms. Lain was not the causative factor in Ms. Lain's death and was not foreseeably identifiable with the normal use of the vehicle. Therefore, Defendants cannot establish the casual connection element of the *Aytes* test. *See Bookert*, 337 S.C. 291, 293, 523 S.E.2d 181, 182; *Wright v. North Area Taxi, Inc.*, 337 S.C. 419, 426, 523 S.E.2d 472, 475–76 (S.C.Ct.App.1999). Because no causal connection exists between the injuries and the use of the automobile as an automobile, the court concludes that Ms. Lain's tragic death did not arise out of the ownership, maintenance, or use of the vehicle.

### 2. Act of Independent Significance

Even if a causal connection did exist, it was broken by an act of independent significance. *See Aytes*, 332 S.C. at 35, 503 S.E.2d at 746 ("[I]f there was a causal link, it was broken when the assailant exited the vehicle."); *Doe v. South Carolina State Budget & Control Bd.*, 329 S.C. 214, 219, 494 S.E.2d 469, 471 (1997), *aff'd*, 337 S.C.

294, 523 S.E.2d 457 (1999) ("Even if we were to hold that Appellants had satisfied the first prong of the test and had demonstrated a causal connection between the vehicle and the injury, we believe Roberson's assaults of Appellants were acts of independent significance which broke the causal chain."); *Wright*, 337 S.C. at 427, 523 S.E.2d at 476 ("[T]he assault of the gunmen broke any causal connection between the vehicle and Rogers' injury because it arose from an act of independent significance.").

In the case *sub judice*, Defendants contend that because Oliver never exited the vehicle and Ms. Lain was the victim of one long, continuous assault, no act of independent significance broke the casual link. The court disagrees.

First, it is clear from the parties' stipulation that regardless of the manner in which Oliver got into the backseat with Ms. Lain, both parties exited the vehicle in the middle of the road to argue at some point before Oliver drove the vehicle behind the church. Thus, the use of the vehicle and Oliver's strangling Ms. Lain are not necessarily inextricably linked as one continuing act or assault. Second, even if a causal connection did exist, it was broken by Oliver's strangulation of Ms. Lain even though Oliver may not have gotten out of the car before strangling her[3] because the assault arose from an act of independent significance—namely, Oliver getting on top of Ms. Lain and strangling her neck with his hands. The fatal injuries that Ms. Lain sustained resulted from Oliver's strangling her and not from

---

2. Defendants are incorrect in their assertion that the parties never exited the vehicle. According to the parties' stipulation, both parties exited the vehicle and argued in the middle of the road before Oliver drove the vehicle to the back of the church.

3. In his voluntary statement, Oliver states that he "got out of the front seat and got into the backseat to talk to [Ms. Lain]." (Pl.Mot.Ex. B.) In a statement taken two days later, when asked how he got into the backseat with Ms. Lain, Oliver replied, "I just climbed over I think." (Pl.Mot.Ex. C.)

his use of the vehicle. Plaintiff states that "South Carolina courts have consistently held that assaults unrelated to the use of the vehicle break any causal link that may have existed." (Pl.'s Response to Defs.' Mot. at 6, 7.) Defendants concede that "this is true, *for injuries caused by gunshots.*" (Defs.' Response to Pl.'s Mot. at 7.) (emphasis in original). In attempting to distinguish being shot from being strangled, Defendants claim that Oliver could not have overpowered Ms. Lain and caused her injury without her vehicle. Unfortunately, the court does not agree with this leap of logic because the fact that Oliver did not stand outside the vehicle and shoot Ms. Lain, but rather, he used his own hands to kill her in the backseat should not affect the result. Oliver admits that he got into the backseat to talk to Ms. Lain, and at some point he lost it and strangled her. Had Oliver strangled Ms. Lain in their home, in the bar, or even on the hood of or beside the car, the injuries Ms. Lain sustained would not have been any different.[4]

### 3. Transportation Limitation

Additionally, even if a causal connection existed and no act of independent significance broke the causal connection, the third element of the *Aytes* test—that the vehicle be used for transportation at the time of the injury—is not satisfied. *See Canal Ins. Co. v. Ins. Co. of N. Am.,* 315 S.C. 1, 5, 431 S.E.2d 577, 580 (1993) (defining the use of a motor vehicle as limited to transportation uses).

 In the case *sub judice,* the stipulated facts establish an ongoing argument

and not necessarily an ongoing assault. It is undisputed that Oliver parked the vehicle, got into the backseat, and strangled Ms. Lain to death. Therefore, in light of *Aytes,* the court concludes that at the time of the injury, when Oliver strangled Ms. Lain, the vehicle was not being used for transportation. *See* 332 S.C. at 35, 503 S.E.2d at 747 (finding that the vehicle was not being used for transportation at the time of the injury where the assailant drove the victim to a remote area and shot her). Ultimately, because the three-pronged *Aytes* test is not satisfied, Ms. Lain's tragic death did not arise out of the ownership, maintenance, or use of the vehicle.

### CONCLUSION

It is, therefore, **ORDERED** for the foregoing reasons that Plaintiff's Motion for Summary Judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment be **DENIED.**

**AND IT IS SO ORDERED.**

---

4. The parties' stipulation states:
[T]o a reasonable degree of medical certainty, Oliver's actions of struggling with Lain and wrapping his hands around/over Lain's neck and mouth caused Lain's bodily injury and death. The parties stipulate that the medical examiners cannot state to a reasonable degree of medical certainty that any injury to Ms. Lain was a result of any automobile collision.
(Def.Mot.Ex. 3.)