# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Progressive Direct Insurance Co., and USAA General Indemnity Company, Petitioners,

v.

Shanna Groves as the Personal Representative of the Estate of Lynn Harrison, Respondent.

Appellate Case No. 2020-001337

_____

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

_____

Appeal from Dorchester County
Alison Renee Lee, Circuit Court Judge

_____

Opinion No. 28115
Heard November 10, 2021 – Filed September 21, 2022

_____

## REVERSED

_____

John Robert Murphy and Wesley Brian Sawyer, both of Murphy & Grantland, PA, of Columbia, for Petitioners Progressive Direct Insurance Co. and USAA General Indemnity Company.

John Phillips Linton, Jr., of Walker Gressette Freeman & Linton, of Charleston, and Ryan Harris Sigal, of Miller, Dawson, Sigal & Ward, LLC, of North Charleston, both for Respondent Shanna Groves.

**JUSTICE HEARN:** In this case we determine whether uninsured or underinsured benefits may be recovered when an individual is shot and killed by another motorist as both cars are stopped at a traffic light. In deciding this question, we revisit and attempt to clarify our somewhat conflicting jurisprudence as to whether such injuries arise out of the "ownership, maintenance, or use" of an automobile. We hold that gunshot injuries do not arise out of the use of an automobile. Therefore, we reverse the court of appeals and reinstate the judgment of the circuit court.

## FACTS/PROCEDURAL HISTORY

Jimi Redman shot and killed Lynn Harrison with a rifle while both were in their vehicles at a stoplight. Immediately before the shooting, Redman, who was driving a Ford Escape, approached Harrison's GMC in the lane to her right. A witness, who was directly behind Harrison in the left lane, saw Redman make hand gestures and blow kisses toward Harrison. There is no evidence that Harrison attempted to evade Redman or that she even saw his gestures. Instead, as the two vehicles stopped at the red light, Redman pulled out a rifle and fired one shot which traveled through Harrison's passenger side window, killing her. Redman subsequently sped away, while Harrison's vehicle, which was still in drive, crept forward until coming to rest in the median. Redman was arrested a few blocks away.

Harrison was insured through her husband's[1] motorcycle policy issued by Progressive and an automobile insurance policy provided by USAA. The Progressive policy provided,

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of:
>
> 1) an uninsured motor vehicle because of bodily injury:
> a) sustained by an insured person;
> b) caused by an accident; and
> c) arising out of the ownership, maintenance or use of an uninsured motor vehicle[.]

---

[1] Tragically, her husband was murdered a few months later in an unrelated matter. The couple's daughter, Shanna Groves, subsequently became the personal representative named as a defendant in this case.

The USAA policy stated,

> We will pay for the following damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of an auto accident:
>
> 1) [bodily injury] sustained by a covered person; and
> 2) injury to or destruction of the property of a covered person.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Progressive filed a complaint seeking a declaratory judgment that there was no coverage because Harrison's injuries did not arise out of the use of Redman's motor vehicle. Both parties filed motions for summary judgment, and the circuit court held a hearing. Progressive contended that Harrison's injuries were not causally connected to the use of Redman's vehicle under our causation analysis set forth in *State Farm Fire & Casualty Company v. Aytes*, 332 S.C. 30, 33, 503 S.E.2d 744, 745 (1998). Further, it contended gunshot injuries are not foreseeably identifiable with the normal use of a vehicle. *See State Farm Mut. Auto. Ins. Co. v. Bookert*, 337 S.C. 291, 293, 523 S.E.2d 181, 182 (1999) (determining injuries suffered from a gunshot involving a vehicle were not foreseeably identifiable with the normal use of a vehicle thereby precluding coverage). Conversely, Groves argued *Aytes* and *Bookert* did not overrule prior case law which is more analogous to the present facts. Accordingly, Groves contended that Redman pursued Harrison before shooting her, thus establishing a causal connection. The circuit court disagreed, concluding Groves failed to demonstrate that Harrison's injuries were causally connected to the use of Redman's vehicle. Additionally, the court determined her injuries were not "foreseeably identifiable with the use of an automobile" and even if they were, firing the rifle constituted an act of independent significance that otherwise broke the causal chain.

Groves appealed, and the court of appeals reversed. *Progressive Direct Ins. Co. v. Groves*, 431 S.C. 203, 206, 847 S.E.2d 114, 116 (Ct. App. 2020). The court concluded *Wausau Underwriters Insurance Company v. Howser*, 309 S.C. 269, 422 S.E.2d 106 (1992) and *Home Insurance Company v. Towe*, 314 S.C. 105, 441 S.E.2d 825 (1994) remained good law, and that both cases were more similar to the instant facts than *Aytes*, *Bookert*, or the federal decisions relied on by Progressive. Thereafter, Progressive filed a petition for a writ of certiorari, which this Court granted.

## ISSUES

Whether injuries arising from the intentional firing of a gun are foreseeably identifiable with the normal use of an automobile and whether the act of firing a gun constitutes an act of independent significance breaking the causal chain?

## STANDARD OF REVIEW

An appellate court reviews a motion for summary judgment using the same standard employed by the circuit court. *Traynum v. Scavens*, 416 S.C. 197, 201, 786 S.E.2d 115, 117 (2016). Whether coverage exists under an insurance contract is a question of law for the Court. *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 593, 762 S.E.2d 705, 709 (2014). Further, cross-motions for summary judgment are treated as questions of law. *Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011).

## DISCUSSION

This case turns on whether Harrison's injuries arose out of the "use" of an uninsured vehicle. Progressive contends the court of appeals erred in finding a causal connection between Harrison's fatal injuries and the use of Redman's motor vehicle. Specifically, it asserts Groves cannot show that Redman's vehicle was an "active accessory" to her injuries or more broadly, that gunshot injuries are "foreseeably identifiable with the normal use of [an] automobile." *Bookert*, 337 S.C. at 293, 523 S.E.2d at 182. Progressive discounts *Howser* and *Towe*, contending because neither decision incorporated the foreseeability component subsequently adopted in *Aytes* and *Bookert*, the court of appeals erred in relying on them. We agree with Progressive.

To recover under an automobile insurance policy, the insured's damages must "arise out of the ownership, maintenance, or use" of the uninsured motor vehicle. S.C. Code Ann. § 38-77-140 (2015). A three-prong test is used to determine whether an insured meets that requirement: (1) the party seeking coverage must establish a causal connection between the injury and the uninsured vehicle, (2) there is no act of independent significance which breaks the chain of causation, and (3) the uninsured vehicle must have been used for transportation at the time. *Aytes*, 332 S.C. at 33, 503 S.E.2d at 745. "No distinction is made as to whether the injury resulted from a negligent, reckless, or intentional act." *Towe*, 314 S.C. at 107, 441 S.E.2d at 827.

Under the first prong, the insured must also show three subparts: "a) the vehicle was an 'active accessory' to the assault; and b) something less than proximate cause but more than mere site of the injury; and c) that the 'injury must be foreseeably identifiable with the normal use of the automobile.'" *Bookert*, 337 S.C. at 293, 523 S.E.2d at 182. The parties agree Redman's vehicle was being used for transportation at the time, so the inquiry focuses on the three subparts under the first element, and whether the act of firing a rifle breaks the chain of causation.

Although in early cases this Court seemed to favor coverage when injuries were caused by an armed motorist, it later retreated from this position. In *Howser*, we answered a certified question asking whether an insured's injuries arose out of the operation of a motor vehicle where an unknown assailant pulled up next to the victim's car and fired a gunshot as she attempted to flee. 309 S.C. at 271, 422 S.E.2d at 107. The Court explained that the assailant was only able to carry out the shooting by using his vehicle to "closely pursue" Howser. The Court also characterized the shooting as part of an "ongoing assault, in which the vehicle played an essential and integral part." *Id.* at 273, 422 S.E.2d at 108.

Approximately two years later, this Court decided *Towe*, holding a tractor driver's injuries were causally connected to the perpetrator's vehicle where a passenger attempted to throw a bottle at a street sign, instead striking the tractor's vehicle and severely injuring him. 314 S.C. at 107-08, 441 S.E.2d at 827. The Court concluded, "The use of the automobile placed Alexander in the position to throw the bottle at the sign and the vehicle's speed contributed to the velocity of the bottle increasing the seriousness of McClaskey's injuries." *Id.* at 107, 441 S.E.2d at 827. Further, the Court noted the act of throwing the bottle did not break the chain of causation because it was "inextricably linked" to the use of the automobile. *Id.* at 108, 441 S.E.2d at 827.

While the insureds in *Howser* and *Towe* were able to establish that their injuries arose out of the use of the tortfeasor's vehicle, those decisions appear to be an aberration in our jurisprudence. In *Aytes,* the Court answered a certified question asking whether injuries suffered from a gunshot were causally connected to the use of an automobile. 332 S.C. at 32, 503 S.E.2d at 745. The shooting occurred after a couple became involved in an altercation leading to Aytes forcing Dawson into her car. *Id.* Aytes then drove to his property intending to kill Dawson. *Id.* Upon arriving there, Dawson attempted to retrieve a gun from the glovebox while Aytes exited the vehicle. *Id.* at 33, 503 S.E.2d at 746. However, Aytes wrestled the gun away from Dawson and shot her in the foot. *Id.* The Court concluded Dawson failed to prove a

causal connection between the use of the vehicle and her injuries because the car was not being used as an "active accessory." *Id.* at 35, 503 S.E.2d at 746. Further, the Court determined even if Dawson could prove a causal link, it was broken when Aytes exited the vehicle. *Id.* While the Court in *Aytes* did not specifically overrule *Howser* and *Towe*, in retrospect we believe it was a game-changer.

Following *Aytes*, this Court in *Bookert* again held injuries arising from a shooting did not trigger automobile insurance coverage. 337 S.C. at 292, 523 S.E.2d at 181. There, approximately fifteen soldiers followed a group of individuals from a Hardees to a McDonalds after the two groups became involved in an altercation. *Id.* While outside the McDonalds, two soldiers yelled at the other individuals from inside their vehicle and discharged a shotgun and a pistol as the vehicle "jerked forward," striking the victim in each leg. *Id.* at 292-93, 523 S.E.2d at 181-82. The Court reversed the court of appeals, which had found a causal connection, holding the victim's injuries were not "foreseeably identifiable with the normal use of an automobile." *Id.* at 293, 523 S.E.2d at 182.

This Court has also concluded that automobile insurance coverage is not triggered when an individual suffers injuries in a vehicle resulting from an accidental shooting. *Peagler v. USAA Ins. Co.*, 368 S.C. 153, 156, 628 S.E.2d 475, 476 (2006). There, a husband, who was retrieving the shotgun he had left in the backseat of the vehicle the day before, accidentally shot and killed his wife as she sat in the driver's seat, preparing to drive their children to school. In *Peagler*, the Court surveyed other appellate decisions addressing both accidental and intentional gunshot injuries, noting generally that courts have held no causal connection exists between gunshot injuries and the use of a motor vehicle.[2] *Id.* at 162-63, 628 S.E.2d at 479-80.

---

[2] *Travelers Indemnity Co. v. Auto World of Orangeburg, Inc.,* 334 S.C. 137, 511 S.E.2d 692 (Ct. App. 1999) (no causal connection between vehicle and injury where deaths occurred from gunshots fired by assailant standing outside of parked car; vehicles were not active accessories in the assault); *Carraway v. Smith,* 321 S.C. 23, 467 S.E.2d 120 (Ct. App. 1995) (no causal connection between vehicle and injury where driver of car was injured when bullet fired by bystander on sidewalk shattered his windshield; any causal link was broken by assailant exiting vehicle in front of motorist and conversing on sidewalk with another person for several minutes before shooting occurred); *Hite v. Hartford Accident Indem. Co.,* 288 S.C. 616, 344 S.E.2d 173 (Ct. App. 1986) (no causal connection between vehicle and injury where insured, an automobile dealership employee, left his idling vehicle and walked fifty feet to instruct another motorist to remain at the dealership because the motorist had

Thus, whether coverage exists in a shooting involving a vehicle has evolved in our jurisprudence. Supporting our view that *Aytes* changed the legal landscape is the fact that there has been no appellate decision allowing coverage where injuries arose from a gunshot wound since *Towe* in 1994; that is, until the court of appeals' decision in this case. In reversing the circuit court and finding coverage here, the court of appeals relied on cases nearly thirty years old which, though not explicitly overruled, were sharply limited by *Aytes* and the new framework it established.

Insurance policies are creatures of contract and are analyzed according to general principles of contract interpretation. *Butler v. Travelers Home & Marine Ins. Co.*, 433 S.C. 360, 366, 858 S.E.2d 407, 410 (2021) ("An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts."). The overarching principle in determining whether coverage exists is to determine whether the parties intended such an event to be covered. *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language."). We agree with other courts that have held it is not reasonable to conclude that the parties to an insurance contract intended gunshot injuries to be covered by an automobile insurance policy. *See State Farm Mut. Auto. Ins. Co. v. DeHaan*, 900 A.2d 208, 226 (Md. Ct. App. 2006) ("Shooting people is likewise not the manner in which vehicles are normally used, or for which they are designed, i.e., vehicles are not normally necessary for shooting people."); *Farm & City Ins. v. Est. of Davis*, 629 N.W.2d 586, 589 (S.D. 2001) ("A majority of courts refuse to find that the insurer and insured contemplated that the conduct involved in a drive-by shooting would be covered under the policy."); *Scales v. State Farm Mut. Auto. Ins. Co.*, 460 S.E.2d 201, 203 (N.C. Ct. App. 1995) ("Clearly, an automobile chase with guns blazing is not a regular and normal use of a vehicle.").

Moreover, even if Groves could satisfy the first *Aytes* factor, she fails on the second one because the act of firing a weapon into another vehicle constitutes an act of independent significance. "Driving a vehicle and discharging a firearm at persons in another vehicle are acts of independent significance." *Olson v. Slattery*, 942 N.W.2d 263, 269 (S.D. 2020). Further, "The shooter's use of a vehicle to position himself to harm another 'ignores his deliberate act of pointing a loaded shotgun out

---

backed into a new truck, and motorist's car struck plaintiff as it left the scene; insured's vehicle played no role in the incident).

his window and firing it into the passenger window[.]'" *Id.* (internal citation omitted). Overall, "Shooting from a vehicle at other persons is not an act inextricably linked to the use of a vehicle." *Id.*; *see also Wright v. N. Area Taxi, Inc.*, 337 S.C. 419, 427, 523 S.E.2d 472, 476 (Ct. App. 1999) ("[T]he assault of the gunmen broke any causal connection between the vehicle and Rogers' injury because it arose from an act of independent significance."). Consequently, under either of the first two factors, Groves cannot establish that Harrison's injuries arose out of the use of Redman's motor vehicle—a position consistent with courts across the country. *See* 7 Am. Jur. 2d Automobile Ins. § 171 ("[C]ircumstances in which one intentionally shoots another from a vehicle have generally not been deemed to have arisen from the ownership, maintenance, or use of the vehicle for purposes of automobile liability insurance coverage . . . .").

## CONCLUSION

Accordingly, we hold gunshot injuries do not arise out of the use of an automobile. We reverse the court of appeals' decision and reinstate the circuit court's order granting Progressive's motion for summary judgment.[3]

**REVERSED**.

**KITTREDGE and JAMES, JJ., and Acting Justice DeAndrea Gist Benjamin, concur. BEATTY, C.J., concurring in result only.**

---

[3] In light of our decision, we decline to address Progressive's remaining issue on appeal contending that the court of appeals made factual findings not supported by the record. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).